**SO ORDERED.**

**SIGNED this 07 day of July, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

ELLIS WADE DUNN,                              CASE NO. 05-09708-8-JRL
                                              Chapter 7
   DEBTOR.

## ORDER

The matter before the court is the trustee's objection to the debtor's amended claim of exemptions. A hearing was held in Wilmington, North Carolina on June 23, 2010.

The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 14, 2005. A final decree and discharge was entered February 7, 2006. In October 2009, the trustee learned that the debtor was entitled to a personal injury settlement from a mass tort pharmaceutical product litigation suit commenced prior to the bankruptcy case. The claim was not listed on the debtor's bankruptcy schedules. Based on this new information, the trustee moved to re-open the case by motion granted November 23, 2009. The debtor then amended his schedules to claim the personal injury settlement as exempt under § 1C-1601(a)(8). The trustee asserts that the debtor's failure to schedule the asset amounts to bad faith.

At hearing, the debtor testified that the omission was accidental and that he never intended to hide any assets from the court. The debtor stated that he could not recall whether his

attorney had asked if he was involved in any pending lawsuits, nor whether he, in fact, informed his attorney of the claim. He claimed that prior to and during the bankruptcy case, he was taking many medications which affected his ability to think and function. To support these contentions, the debtor provided the court with letters from his physician that listed in detail numerous mind-altering medications prescribed to the debtor for anxiety, depression, fibromyalgia, and chronic back pain. As a side-effect of these medications, the debtor asserted that he frequently became light headed and was unable to think clearly. He was prescribed the medications before his bankruptcy petition was filed and throughout the pendency of the case. In addition to his own mental and physical health challenges, the debtor's case was complicated when the attorney he hired to file his bankruptcy petition retired. Her practice was taken over by an attorney whose incompetence led to a multitude of errors, which remain well-remembered by this court.[1]

      The debtor also produced a letter from the attorney prosecuting the class action suit as evidence of his subjective belief that he would not recover any money from the lawsuit. The form letter dated May 2, 2006, was broadly addressed to "OxyContin Client" and informed the debtor that the class action had been dismissed by the Supreme Court of Mississippi in 2004, that no settlement or judgment had been reached on any claims after four years of litigation, and suggested that the litigation would not be resolved any time soon. This is one of four letters the debtor claims to have received during the five years of litigation, all of which gave him the impression that a successful outcome was unlikely. Additionally, the debtor maintained that he did not initiate the suit himself or have any active involvement in the case, but that he merely

---

[1] The errors committed by her replacement rose to such a high level that the attorney was forced to come out of retirement in an attempt to rectify the problems.

received a letter from an attorney informing him that the lawsuit was in progress and occasional updates on the status of litigation, all of which suggested that financial recovery was unlikely.

Bankruptcy Rule 1009(a) allows a debtor to amend a voluntary petition, schedules, or statement as a matter of course at any time before the case is closed. FED. R. BANKR. PRO. 1009(a). Reopening a case does not revive the debtor's absolute right to amend the schedules. In re Wilmoth, 412 B.R. 791, 795 (Bankr. E.D. Va. 2009). However, the court has discretion to permit the debtor to amend the schedules if the failure to act before the case closed resulted from excusable neglect. FED. R. BANKR. PRO. 9006(b)(1). When determining whether excusable neglect has been shown, the Fourth Circuit relies on the two-prong test set forth by the Supreme Court in Pioneer Investment Services v. Brunswick Associates, 507 U.S. 380 (1993). Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 533 (4th Cir. 1996).

To satisfy the first prong of the test, the omission must result from neglect; the second prong requires that the neglect be "excusable." Pioneer, 507 U.S. at 388, 395. Neglect is defined with reference to Webster's Dictionary as "to leave undone or unattended to especially through carelessness," and includes situations where a party misses a deadline through "inadvertence, miscalculation, or negligence." Id. at 388. In finding that neglect is "excusable" the court must make an equitable determination taking account of the totality of the circumstances, including:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 395. This "elastic concept" does not require rigid application of these factors, nor does it render determinative whether the error was caused by circumstances outside the party's control.

3

See id. at 392; Wilmoth, 412 B.R. at 797.

      The court finds that the debtor's failure to schedule the personal injury claim as an exempt asset resulted from excusable neglect.  While it is unclear whether either of the debtor's attorneys was informed of the pending litigation, the ineptitude of the debtor's substitute counsel taken in combination with the mental infirmity caused by the debtor's various afflictions and prescription medications suggests that the omission was an oversight rather than the result of any fraudulent agenda.  Furthermore, although the contours of the debtor's claim in the class action suit are not certain, as the debtor himself is unsure how he became part of the class, there is no indication that the debtor sought the services of an attorney or took any action to initiate the lawsuit.  Likely, he simply failed to opt out of a certified class.  Thus, when viewed in conjunction with the correspondence received by the debtor from the prosecuting attorney, the debtor's testimony as to his subjective belief that the claim was a lost cause is credible.  In examining the totality of the circumstances, the court notes that the personal injury settlement is fully exempt under North Carolina law, such that the debtor received no financial gain by failing to include the asset on his schedules.  Disallowing the exemption at this juncture would deprive the debtor of an asset that he is otherwise lawfully entitled to and would result in a windfall to his creditors not sanctioned by the Bankruptcy Code.  The court would be inclined to surcharge the exempt asset for the expenses incurred by the trustee in bringing this action, but the majority construction of 11 U.S.C. § 522(k) does not permit the court to surcharge an exempt asset for administrative expenses under circumstances other than those provided by the Code.  See Scrivner v. Mashburn (In re Scrivner) 535 F.3d 1258, 1263-65 (10th Cir. 2008).

Based on foregoing, the trustee's objection to the debtor's amended claim of exemptions is OVERRULED.

**"END OF DOCUMENT"**